IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLEXTECH RIGHTS LIMITED,

                Plaintiff,

v.                                                                                          1:07 - CV - 10676

                                                                            **AMENDED COMPLAINT**

HALLMARK ENTERTAINMENT INC,
HALLMARK ENTERTAINMENT DISTRIBUTION
COMPANY, RHI ENTERTAINMENT HOLDING,
LLC, HALLMARK ENTERTAINMENT
INVESTMENTS COMPANY, CROWN MEDIA
HOLDINGS, INC., CROWN MEDIA UNITED
STATES, LLC, RHI ENTERTAINMENT, INC., RHI
ENTERTAINMENT DISTRIBUTION, LLC, and
RHI ENTERTAINMENT LLC.

                Defendants.

Plaintiff Flextech Rights Limited ("Flextech") for its Complaint against Defendants Hallmark Entertainment Inc. ("HEI"), Hallmark Entertainment Distribution Company ("HEDC"), RHI Entertainment Holding, LLC, Hallmark Entertainment Investments Company, Crown Media Holdings, Inc., Crown Media United States, LLC, RHI Entertainment, Inc., RHI Entertainment Distribution, LLC, (the latter six defendants sometimes referred to collectively as "HEDC Successor Companies"), and RHI Entertainment LLC hereby alleges as follows:

## Nature of the Claim

1. This is a complaint for breach of contract against HEDC and the HEDC Successor Companies for breach of payment obligations under a Distribution Agreement ("Agreement") dated November 22, 1996. (Exhibit A.) Plaintiff also brings a claim against Defendant HEI and Defendant RHI Entertainment LLC for breach of payment obligations under a Deed of Guarantee ("Guarantee") between HEI and Flextech dated November 22, 1996. (Exhibit B.)

## The Parties

2. Plaintiff Flextech is a company registered in England and Wales with its principal place of business located at 13 Albemarle Street, London W1X 3AJ, England.

3. Upon information and belief, Defendant HEI is a corporation organized under the laws of Delaware with its principal place of business located at 1325 Avenue of the Americas, New York, NY 10019.

4. Upon information and belief, Defendant HEDC is a corporation organized under the laws of Delaware with its principal place of business located at 1325 Avenue of the Americas, New York, NY 10019.

5. Upon information and belief, Defendant RHI Entertainment Holding, LLC is a corporation organized under the laws of Delaware with its principal place of business located at 1325 Avenue of the Americas, New York, NY 10019.

6. Upon information and belief, Hallmark Entertainment Investments Company is a corporation organized under the laws of Delaware with its principal place of business located at 1325 Avenue of the Americas, New York, NY 10019.

7. Upon information and belief, Crown Media Holdings, Inc., is a corporation organized under the laws of Delaware with its principal place of business located at 12700 Ventura Boulevard, Studio City, CA 91604.

8. Upon information and belief, Crown Media United States, LLC, is a corporation organized under the laws of Delaware with its principal place of business located at 12700 Ventura Boulevard, Studio City, CA 91604.

9. Upon information and belief, RHI Entertainment, Inc. is a corporation organized under the laws of Delaware with its principal place of business located at 1325 Avenue of the Americas, New York, NY 10019.

10. Upon information and belief, RHI Entertainment Distribution, LLC is a corporation organized under the laws of Delaware with its principal place of business located at 1325 Avenue of the Americas, New York, NY 10019.

11. Upon information and belief, one or more of the aforementioned HEDC Successor Companies may be the successor in interest to HEDC's obligations under the Distribution Agreement.

12. Upon information and belief, RHI Entertainment LLC is a corporation organized under the laws of Delaware with its principal place of business located at 1325 Avenue of the Americas, New York, NY 10019. Upon information and belief, RHI Entertainment LLC may be the successor in interest to HEI's obligations under the Guarantee.

### Jurisdiction and Venue

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of the parties and the amount in controversy exceeds $75,000.

14. This Court has personal jurisdiction over HEI because, among other things, it is present and doing business in the State of New York.

15. This Court has personal jurisdiction over HEDC and the HEDC Successor Companies because, among other things, they are present and doing business in the State of New York, and/or succeeded to the rights and obligations under the Distribution Agreement of HEDC.

16. This Court has personal jurisdiction over RHI Entertainment LLC because, among other things, it is present and doing business in the State of New York.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## **Background**

18. On November 22, 1996, Flextech and HEDC entered into a Distribution Agreement under which HEDC agreed to serve as Flextech's exclusive agent for the licensing of all rights granted to Flextech under certain agreements between Flextech and HEI. The rights granted to Flextech included rights to two categories of television motion picture: (1) "Original Output Movies" and (2) "Additional Output Movies."

19. Under the Distribution Agreement, Flextech granted exclusive rights to HEDC to distribute both Original Output Movies and Additional Output Movies.

20. Under the Distribution Agreement, HEDC agreed to pay to Flextech one hundred percent of the revenue generated as a result of HEDC's distribution of the Original Output Movies and Additional Output Movies, net of certain actual, direct, and out-of-pocket costs incurred by HEDC.

21. With respect to the aforementioned distribution costs, HEDC agreed that such costs shall "only be payable by Flextech out of the revenues received by Flextech," and that

such costs shall in any event be "capped at a maximum of $5,000" per title of each Output Movie.

22.     The Distribution Agreement states further that HEDC's costs for each Output Movie may not be "cross collateralized" with any expenses relating to other Output Product titles. Rather, HEDC's costs "shall only be payable . . . out of the revenues received . . . from the title to which such costs relate."

23.     Moreover, HEDC further agreed in paragraph 5 of the Distribution Agreement that the amounts to be paid by HEDC under the Distribution Agreement shall be: (1) not less than $50,000 for each Original Output Movie; and (2) not less than $100,000 for each Additional Output Movie, net of costs as aforesaid. These guaranteed minimum payments are "in addition to any revenue" that Flextech was to receive pursuant to a License Agreement between Flextech and Hallmark Entertainment Network, Inc. ("HEN") dated November 22, 1996. (Exhibit C.)

24.     HEDC agreed to pay Flextech $50,000 for each Original Output Movie no later than December 31, 2001 and $100,000 for each Additional Output Movie no later than December 31, 2003. However, HEDC failed to make substantial payments owing to Flextech, notwithstanding demand therefor, in the approximate amount of $5,200,000.

25.     On November 22, 1996, HEI and Flextech entered into a "Deed of Guarantee" under which HEI irrevocably and unconditionally guaranteed the due and punctual payment to Flextech of any sums owing under the Distribution Agreement. Notwithstanding demand therefor, HEI has failed to pay Flextech the amounts owing under the Distribution Agreement as required by the Deed of Guarantee.

### Count I: Breach of Contract

### (Against HEDC and the HEDC Successor Companies)

26. HEDC and/or the HEDC Successor Companies have breached the Distribution Agreement with Flextech by failing to pay the sums owed to Flextech under the agreement.

27. HEDC and/or the HEDC Successor Companies are liable to Flextech in the approximate amount of $5,200,000.

### Count II: Breach of Contract

### (Against HEI and RHI Entertainment LLC)

28. HEI and/or RHI Entertainment LLC have breached the payment obligations under the Deed of Guarantee by failing to pay the sums owing to Flextech under the Distribution Agreement for which HEI and/or RHI Entertainment LLC are liable as guarantor.

29. HEI and/or RHI Entertainment LLC are liable to Flextech in the approximate amount of $5,200,000.

30. HEI and/or RHI Entertainment LLC are also liable under paragraph 1.1 of the Guarantee for, _inter alia_, all costs and expenses, including legal fees, incurred in connection with this action.

### Prayer for Relief

WHEREFORE, Flextech prays for judgment:

A.   Awarding Flextech damages against HEDC and/or the HEDC Successor Companies on account of the breach of the Distribution Agreement in an amount to be determined at trial, but which is believed to be approximately $5,200,000.

B.   Awarding Flextech damages against HEI and/or RHI Entertainment LLC on account of the breach of obligations in the Deed of Guarantee in an amount to be determined at trial, but which is believed to be approximately $5,200,000 plus, as provided in the Guarantee, Flextech's costs and expenses including legal fees;

C.   Awarding Flextech pre- and post-judgment interest to the maximum extent permitted by law;

D.   Awarding Flextech attorneys' fees, costs, and expenses that it incurs in prosecuting these claims; and

E.   Granting Flextech such other and further relief as this Court deems just and proper.

December 10, 2007

Respectfully submitted,

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

_____
Elliot E. Polebaum
1001 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20004
Tel.: (202) 639-7000

One New York Plaza
New York, NY 10004
(212) 859-8000
Counsel for Plaintiff

625617

# EXHIBIT A

November 22, 1996

Flextech Rights Limited ("Flextech")
Twyman House
16 Bonny Street
London NW1 9PG
England

HEDC/FLEXTECH DISTRIBUTION AGREEMENT

Gentlemen:

For and as an inducement to you, Flextech, to enter into an amending agreement of even date with Hallmark Entertainment Inc ("HE") further amending the Agreement dated as of August 30, 1994 between Flextech plc and HE (collectively "the Agreement"), the parties for good and valuable consideration hereby agree that (and all capitalised terms used herein shall have the meaning set forth in the Agreement):

1.  Hallmark Entertainment Distribution Company of 1325 Avenue of the Americas 21st Floor New York NY 10019 ("HEDC") shall serve as Flextech's exclusive agent for the licensing of all rights granted to Flextech for all Output Product licensed to Flextech pursuant to Section II of the Agreement for the Licence Term and territory for Output Product as set out in the Agreement unless terminated earlier in accordance with paragraph 7 hereof.

2.  In its capacity as exclusive agent, HEDC shall provide all customary and usual services provided by a distributor of television motion pictures as shall be reasonably requested by Flextech it being agreed that all licences or other agreements negotiated by HEDC in connection with such services (i) shall be subject to good faith consultation with Flextech (ii) will be issued in the name of and signed by a representative of Flextech (iii) must be negotiated on an arm's length basis for fair market rates and (iv) to the extent Output Product is licensed as part of a package with other programming distributed by HEDC all allocation of revenues to the Output Product must be fair equitable and reasonable and if so required by Flextech in writing HEDC shall promptly supply Flextech with full details of any such packaging deals including the other titles packaged together with Output Product, the total consideration and its apportionment amongst all titles in the package and HEDC's reasons for the allocation HEDC has given to the Output Product.

3.  If Flextech wishes to use any Output Product titles on any of the Flextech group of channels during the Term hereof then provided rights thereto are available HEDC agrees that it will reasonably consider any such request and negotiate in good faith with Flextech the terms upon which Flextech may license the same from HEDC Provided That nothing herein shall require HEDC to enter into a licence agreement with Flextech.

4.  HEDC agrees that it shall not charge any distribution fee or commission in connection with its services hereunder, and Flextech agrees that it shall not require any advance to be paid to it hereunder. Flextech shall receive 100% of the revenue generated as a result of HEDC's services hereunder, provided that HEDC shall be entitled to be paid therefrom all actual, direct, out-of-pocket costs and expenses incurred by HEDC in connection with its services hereunder as shall be invoiced to (but subject to audit within customary parameters by) Flextech which shall be capped at a maximum of US$5,000 per title of Output Product which sums may not be cross collateralised with

1.

0790791.10

DENTON HALL

expenses related to other Output Product titles and which shall only be payable by Flextech out of the revenues received by Flextech from the title to which such costs relate.

5. HEDC hereby guarantees that, in addition to any revenue derived by Flextech from the agreement of even date between Hallmark Entertainment Networks ("HEN") and Flextech, Flextech will receive: (a) not less than US$50,000 with respect to each of the Original Output Movies on or before December 31, 2001; and (b) not less than US$100,000 with respect to each of the Additional Output Movies on or before December 31, 2003 net of all commission fees, expenses or costs including those actual direct out of pocket costs and expenses referred to in paragraph 4. To the extent that at either of those dates Flextech has not received the aforesaid sums then Flextech shall give HEDC written notice requiring such payment to be made and HEDC shall pay the said shortfall within 60 days of such notice and if any such shortfall is not paid within that period (time being of the essence of such payments) then all outstanding guaranteed sums hereunder together with all sums payable under an agreement of even date between Flextech and Hallmark Entertainment Network shall become immediately due and payable to Flextech together with interest thereon from the dates such sums were originally due to be paid until the date they are actually received by Flextech calculated at the prime dollar rate of Flextech's principal bankers. For the avoidance of doubt all distribution monies generated by HEDC's distribution activities hereunder in respect of the Original Output Movies and/or Additional Output Movies in excess of the aforesaid guaranteed sums and the distribution expenses set forth in paragraph 4 above shall belong solely and absolutely to Flextech.

6. This Agreement is personal to HEDC and may not be assigned by HEDC.

7. HEDC's rights hereunder may be terminated by Flextech:

   (i) forthwith by notice in writing in the event of material breach by HEDC of any of the terms hereof which breach if capable of remedy is not remedied within 60 days of Flextech's notice requiring the same to be remedied;

   (ii) HEDC being wound up or dissolved or being insolvent or bankrupt or making an arrangement for benefit of creditors or if a liquidator receiver or trustee is appointed over any of its assets;

   (iii) by 3 months notice in writing;

In the event of termination by Flextech any guarantees by HEDC in paragraph 5 above due to be paid after the date of termination shall cease to be payable unless termination is pursuant to sub-paragraph 7(ii) or if under sub-paragraph 7(iii) the notice is given at any time after 31st December 2003. In the event of Flextech terminating this agreement it agrees it will continue to observe and honour all licences concluded in accordance with the terms of this agreement. HEDC acknowledges that it has no right to terminate this agreement and that should it purport or attempt to terminate the same then the guarantee payments referred to in paragraph 5 will nonetheless remain in full force and effect.

Kindly confirm your agreement to and acceptance of the foregoing by countersigning below where indicated.

The agreement may be signed by the parties to it by way of counterparts each of which when so signed shall be original but all counterparts shall together constitute one and the same instrument.

DENTON HALL

Hallmark Entertainment Distribution Company

By: _____
A Duly Authorised Officer

Agreed to by
Flextech Rights Limited

By: _____
A Duly Authorised Officer

3.

0790791.10

# EXHIBIT B

## DEED OF GUARANTEE

THIS DEED is made the 22nd day of November 1996

**BETWEEN**

(1) **FLEXTECH RIGHTS LIMITED** registered in England whose registered office is at 13 Albemarle Street, London W1X 3AJ England ("Flextech") and

(2) **HALLMARK ENTERTAINMENT INC.** a corporation organised and existing under the laws of Delaware whose principal place of business is at 1325 Avenue of the Americas, 21st Floor, New York, NY 10019, U.S.A. ("HE")

**NOW IT IS HEREBY AGREED** as follows:

1.1 HE hereby irrevocably and unconditionally guarantees as a continuing guarantee the due and punctual payment or discharge of all sums which shall for the time being and from time to time (and whether now or hereafter) be due, owing, incurred or outstanding by or from Hallmark Entertainment Distribution Company (HEDC) to Flextech under the Distribution Agreement of even date between HEDC (1) and Flextech (2) ('the Distribution Agreement') and by or from Hallmark Entertainment Networks (HEN) to Flextech under the License Agreement of even date between HEN (1) and Flextech (2) ('the License Agreement') whether solely or jointly with any other person, whether as principal or surety and whether actually or contingently and the payment of all damages awarded against HEDC for breach of the Distribution Agreement and against HEN for breach of the License Agreement and against HE for breach of this Deed whether or not the Distribution Agreement and / or License Agreement and/or this Deed is terminated and agrees to indemnify Flextech from and against all demands, claims, liabilities, losses, damages, costs and expenses whatsoever (including all interest, penalties, legal and other expenses, together with value added and similar taxes thereon if applicable) which Flextech may suffer through or arising from any failure by HEDC and/ or HEN duly fully and punctually to pay any such sum or any other sum required to be paid by them or otherwise to perform their respective obligations under the Distribution Agreement or License Agreement as appropriate.

1.2 All sums payable hereunder by HE shall be paid immediately on demand to Flextech in full without any deduction, withholding, counter-claim or set off other than that to which HE may be entitled as against Flextech and Flextech plc pursuant to an agreement originally between Flextech plc and HE dated 30th August 1994 as amended most recently by a letter agreement of even date between the parties hereto and Flextech plc and if HE is compelled by law or required by any present or future law, regulation, treaty official directive or request (whether or not having the force of law but, if not, being of a type which banks in the jurisdiction are accustomed to comply with) to make any deduction or withholding from any such sums or if any payment hereunder shall be or become subject to any tax, duty, levy or impost of any nature (whether before or after the same has been paid to the Flextech ) HE shall immediately pay to Flextech such additional amount or amounts as will result in payment to and retention by Flextech of the full amount or amounts which would have been received and retained by Flextech but for such deduction or withholding or the imposition of such tax, duty, levy or impost.

1.

HXC/0789896.05

1.3 Without prejudice to Flextech's rights against HEDC and / or HEN, as between Flextech and HE, HE shall be liable hereunder as if it were the sole principal debtor and not merely a surety, and its liability hereunder shall not be released, discharged or diminished by:

   (a) any legal limitation, lack of capacity or authorisation or defect in the actions of HEDC and/ or HEN in relation to, any invalidity or unenforceability of, or any variation (whether or not agreed by HE ) of any of the terms of the Distribution Agreement or the License Agreement to which this Guarantee relates, the bankruptcy, liquidation, insolvency, or dissolution of HEDC and / or HEN or any change in HEDC and / or HEN's identity, constitution, status or control; or

   (b) any forbearance, neglect or delay in seeking performance of the obligations of HEDC and /or HEN, any granting of time, indulgence or other relief to HEDC and / or HEN in relation to such performance, or any composition with, discharge, waiver or release of HEDC and / or HEN; or

   (c) any other act, omission, fact or circumstance (whether or not similar to or of the kind referred to in (a) or (b) above) which might otherwise release, discharge or diminish the liability of a guarantor.

1.4 Any release, settlement or discharge between Flextech and HE shall be conditional upon no security or payment made or given to Flextech being avoided, reduced, set aside or rendered unenforceable by virtue of any provision or enactment now or hereafter in force relating to bankruptcy, insolvency or liquidation and if any such security or payment shall be avoided, reduced, set aside or rendered unenforceable Flextech shall be entitled to recover the full amount or value of any such security or payment from HE and otherwise to enforce the provisions of this Guarantee as if such release, settlement or discharge had not taken place.

This Deed may be executed by the parties to it in separate counterparts each of which when so executed shall be original and shall together constitute one and the same instrument.

IN WITNESS whereof this Deed has been duly executed

EXECUTED as a deed by the said )
Flextech Rights Limited )
in the presence of )
)
)
)
          Director

          Director/Secretary

EXECUTED and delivered )    HALLMARK ENTERTAINMENT INC.
as a Deed by Hallmark )
Entertainment Inc )
acting by its duly authorised )    By ............................................
officer )    Authorised Officer

2.                                                          HXC/0789896.05

# EXHIBIT C

November 22 1996

Flextech Rights Limited ("Flextech")
Twyman House
16 Bonny Street
London NW1 9PG
England

HEN/FLEXTECH LICENCE AGREEMENT

Gentlemen:

This letter shall serve to confirm the licence agreement arranged by Hallmark Entertainment Distribution Company ("HEDC") between Flextech and Hallmark Entertainment Network Inc. ("HEN") on the following terms and conditions:

1.  Flextech hereby licenses to HEN pay television exhibition rights in the United Kingdom and Republic of Ireland to all "Original Output Movies" and "Additional Output Movies" (as such terms are defined in the agreement between Flextech and Hallmark Entertainment Inc. dated August 30, 1994, as thereafter amended) for exhibition only on television channel(s) owned or controlled by HEN or if there is no such HEN owned or controlled channel or such channel ceases operation HEN may sub-license its windows for use only within specific scheduled blocks of time which are separately branded and promoted with the "Hallmark" or "Hallmark Network" or similar name on other pay television delivery platforms (e.g. Sky or other satellite service). HEN shall cease any future sub-licensing for use as a branded block once it decides to establish a HEN owned or controlled channel

2.  HEDC and HEN will proceed in good faith to co-ordinate HEN pay television exhibition with other HEDC licensed exhibitions in the United Kingdom, it being agreed that: (a) HEN shall be entitled to two eighteen month exclusive windows per Picture and the expiry date of the second window shall not be later than December 31, 2003, (b) during each window, HEN shall be entitled to its customary number of runs per Picture which shall be no more than the number of runs licensed to HEN by non-affiliated companies for similar movies licensed to HEN for a similar price and window as the movies licensed hereunder unless Flextech agrees otherwise in writing, (c) 70 Pictures shall have their first and third United Kingdom windows on HEN channel(s) and the remaining 70 Pictures will have their second and fourth United Kingdom windows on HEN channel(s).

3.  For and in consideration of the licence granted to HEN, HEN shall pay to Flextech US$100,000 per Output Movie for an aggregate amount of US$14 million payable in four equal instalments on December 15, 1997; December 15, 1998; December 15, 2000 and December 15, 2001 regardless of whether the windows or any of them are actually used by HEN. To the extent that at any of these dates Flextech has not received the sums due then Flextech shall give HEN written notice requiring such payment to be made and HEN shall pay the sums due within 60 days of such date and if any

1.                                                                0790796.10

such sums are not paid within that period (time being of the essence of such payments) then all sums payable hereunder together with all sums payable under a distribution agreement between HEDC and Flextech of even date shall become immediately due and payable together with interest thereon from the dates such sums were originally due to be paid to the date they are actually received by Flextech calculated at the prime dollar rate of Flextech's bankers.

4. HEN acknowledges and agrees that the rights hereby licensed to it are for use on the Hallmark Network only as referred to in paragraph 1 and may not be otherwise sub-licensed by HEN and provided further that if the sub-licensing of windows or a window of the Output Movies for use in a branded block as described in paragraph 1 results in gross payments to HEN or any Affiliate of HEN in excess in the aggregate of US$14,000,000 then a sum equal to such excess shall be accounted for and paid to Flextech within 90 days of HEN or its Affiliate receiving the same. In the event that HEN establishes an owned or controlled channel after having sub-licensed some of its windows hereunder for use in a permitted branded block then the excess payable to Flextech shall be a sum equal to the gross payments to HEN or any Affiliate of HEN from the sub-licensing of all windows to the branded block less US$50,000 for each window so sub-licensed. Any payments of excess due to Flextech arising under this paragraph in the event of the subsequent establishment of a HEN owned or controlled channel shall be paid within 90 days of the launch of that channel. The terms of any such sub-licensing by HEN as permitted hereunder must be on the basis of an arm's length negotiation and at fair market rates and to the extent any of the Output Movies are licensed as part of a package with other programming all allocation of revenues to the Output Movies must be fair equitable and reasonable and if so required in writing by Flextech HEDC will promptly supply Flextech with full details of any such packaging deal including the other titles packaged together with the Output Movies, the total consideration and its apportionment amongst all titles in the package and HEN's reasons for the allocation HEN has given to the Output Movies. HEN shall keep full books and records of account of all sub-licensing of Output Movies as permitted hereunder and Flextech shall be entitled to audit the same during normal business hours upon reasonable prior notice and take extracts therefrom and in the event any such audit reveals an underpayment to Flextech in excess of 5% or more then HEN shall bear the cost of such audit and shall forthwith pay all sums owed together with interest thereon from the dates they were originally due to be paid to the date they are actually received by Flextech calculated at the prime dollar rate of Flextech's bankers.

Kindly confirm your agreement to and acceptance of the foregoing by countersigning below where indicated

The agreement may be signed by the parties to it by way of counterparts each of which when so signed shall be original but all counterparts shall together constitute one and the same instrument.

Hallmark Entertainment Network Inc.

By: _____
   A Duly authorised Officer

Agreed to by
Flextech Rights Limited

By: _____
   A Duly Authorised Officer